IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GOLON, INC. *FORMERLY KNOWN AS*,
GOLON MASONRY RESTORATION, INC.,

          Plaintiff,

v.

SELECTIVE INSURANCE COMPANY OF
THE SOUTHEAST and SELECTIVE
INSURANCE COMPANY OF AMERICA,

          Defendants.

17cv0819

**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

**I. Overview**

This is a breach of contact and bad faith case predicted upon Selective Insurance's decision not to settle an underlying state court case against its insured, Golon, within its $11 million policy limits. In the underlying state court case, Selective, the insurer, refused to settle within the limits of its two policies (totaling $11 million in coverage) which it had issued to Golon, its insured, in an underlying state court case. The underlying action involved a tragic traffic accident, which occurred when an employee of Golon, while driving one of Golon's vehicles, collided with a disabled vehicle containing a family of four, resulting in numerous injuries to three of the family members and the death of one child.

Despite Selective's receipt of input (including an evaluation of the value of the case) from a well-respected insurance defense attorney, hired by Selective to represent Golon in the underlying action, and despite the repeated requests from Golon's personal counsel that Selective settle the case with the underlying plaintiff-family for a greater sum than what Selective had offered (but still within the policies' combined limits), Selective refused to settle the matter.

Instead of listening to the advice of the insurance defense counsel it hired for Golon and Golon's own request to settle within policy limits, Selective fired the well-respected attorney, hired a new insurance defense attorney to represent Golon in the underlying action, and consistently rejected the requests of its insured to settle the matter within the limits.

The state court case was tried in the Court of Common Pleas of Allegheny County, Pennsylvania, and the jury returned a verdict in the amount of $32 million dollars against Golon and Golon's driver. Following the $32 million state court verdict, Golon brought the instant federal breach of contract and bad faith lawsuit alleging Selective engaged in, "bad faith, high risk, [and] brinkmanship negotiation strategy," over Golon's objections.

## II. The Pending Motions

Presently before the Court is a Motion to Compel the discovery of 77 documents[1] which was filed by the insured, Golon (ECF 58), and a Cross-Motion for Protective Order filed by Golon's insurer, Selective. ECF 60. Selective's Cross-Motion for Protective Order also contains its Response in Opposition to Golon's Motion to Compel. The Court ordered that the 77 documents be filed under seal (ECF 64), and Selective filed these 77 documents under seal. ECF 67.

By way of brief background, Selective, during the course of discovery proceedings in this action, produced a privilege log which identified 398 documents as either withheld or redacted for various reasons. Golon's Motion to Compel challenges 77 of those documents which were withheld or redacted for either of these of two reasons: (1) a privilege, styled as "[m]ediation

---

[1] The Court notes that although the Parties referenced "400 pages" or "400 documents" during the November 7, 2017 status conference (see ECF 61), Selective subsequently filed a Motion for Clarification (ECF 65) which indicates that the actual number of documents subject to Golon's Motion to Compel amounts to 77 documents. See ECF 65 at ¶ 9. However, the total volume of redacted and withheld documents is still substantial.

and/or settlement conference privilege pursuant to 42 Pa.C.S.A. §5949[,]" and (2) lack of relevance because the document pertains to reinsurance information. ECF 58.

Golon's Motion to Compel alleges that the 77 documents, which Selective has redacted and/or has refused to turn over, support Golon's bad faith claim. Selective has refused to produce complete, unredacted copies of the 77 documents contending (in part) that such disclosure would violate Pennsylvania's mediation privilege. Selective takes this position, even though it has produced or partially produced documents which purportedly support its "good faith" position and which, arguably, are also within said privilege.

Selective's Cross-Motion for Protective Order seeks to not only prevent Golon from obtaining the 77 documents which fall into either of the two above categories (hereinafter, the "mediation privilege documents" and the "reinsurance documents"), but also contends that Golon is not entitled to elicit any testimony concerning the mediations which took place in the underlying matter, nor any testimony pertaining to reinsurance.

After an *in camera* review of these documents, the Court finds itself confronted with the difficult task of balancing respect for an important mediation privilege, supported by public policy, while seeking not to allow this privilege to be misused or abused, and seeking to prevent the application of such privilege to thwart justice in this particular case.

**III. Relevant Factual Background**

The underlying state court case was brought by a family who were involved in a motor vehicle accident with a vehicle owned by Golon and operated by one of Golon's employees at the time of the accident. The mother and father brought the underlying case on their own behalf, as well as on behalf of their two minor children, one of whom was killed as a result of the accident. The state case was mediated twice by two different, independent mediators. Those two independent mediators – former Pennsylvania Court of Common Pleas Judge, Gary Caruso, and attorney David White – were paid for their services by the parties in the underlying state court action. In addition, immediately prior to trial, Presiding Allegheny County Court of Common Pleas Judge Paul Lutty held a conference with the parties and attempted to resolve the matter.

Golon had $11 million in insurance coverage through Selective. During one, if not both, of the mediations, and during the pretrial conference, the underlying plaintiffs demanded a sum below Selective's $11 million collective insurance policy limits. Selective opted not to settle with the plaintiffs in the underlying state court action and instead proceeded to trial.

By the time the underlying case was tried in the state court, the employee-driver of Golon's vehicle pled guilty to vehicular homicide, and this fact was made known to the jury in the underlying civil case. In addition, the trial judge in the underlying case dismissed the other potential co-defendants who had come in contact with the family's vehicle prior to the accident.

The case went to trial, and on December 16, 2015, the jury returned a $32 million verdict against Golon and Golon's driver in favor of the underlying plaintiffs – the family members of the decedent child.

Although Selective appealed this verdict to the Superior Court of Pennsylvania on Golon's behalf,[2] Golon initiated the instant lawsuit in this Court alleging that Selective acted in bad faith when it refused to settle the underlying negligence case when the underlying plaintiffs demanded less than the $11 million combined policy limits.[3] Golon initiated the instant federal lawsuit while his state court appeal was pending because the outstanding judgment in state court is allegedly harming Golon's credit rating and causing harm to Golon's business.

Turning to the instant bad faith lawsuit filed before this Court, Golon now seeks to obtain access to 77 documents which appear on Selective's privilege log. Some of these documents were redacted and some were completely withheld from Golon. Selective's privilege log with respect to these 77 documents indicates that these 77 documents were either redacted or withheld because they either: (1) were subject to Pennsylvania's mediation privilege and a "settlement conference privilege," or (2) were not relevant to this litigation because they reference or relate to reinsurance.

---

[2] After post-trial motions were adjudicated in the underlying case, the state court entered a judgment against Golon and Golon's driver in the amount of $35,114,122.78. Selective filed a Notice of Appeal in the underlying state court case on behalf of Golon on May 23, 2016. In addition, Selective posted a supersedeas appeal bond on behalf of Golon in the underlying state court case which will purportedly protect Golon from this judgment and will purportedly fully satisfy the judgment in the event that the Superior Court denies Golon's appeal. See ECF 29.

[3] Selective, relying on the supersedeas appeal bond and the appeal it filed on behalf of Golon, attempted to block and/or postpone the adjudication of the instant federal bad faith lawsuit. Selective filed a Motion for Judgment on the Pleadings as to All Claims, Without Prejudice, or in the Alternative, Motion to Stay Proceedings Pending Entry of Final Judgment in Underlying Action. ECF 31. In its Motion for Judgment on the Pleadings (ECF 31), Selective claimed that Golon's bad faith lawsuit before this Court was essentially "unripe" due to the unresolved state court issue currently on appeal. However, this Court denied that Motion (ECF 42). This Court notes that the "decision" which formed the basis of the instant bad faith lawsuit is final. There is no appeal Selective can file which can "unring the bell" with respect to the decision Selective made to only offer the underlying plaintiff-family less than half of its combined policy limits – a decision which ran contrary to the evaluation/advice of Golon's first, learned insurance defense attorney and against the repeated requests of Golon's personal counsel.

**IV. Legal Standard of Review**

    **A. Mediation Privilege**

Federal Rule of Evidence 501 states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." The Parties in the instant matter agree that the privilege rules of the Commonwealth of Pennsylvania apply to this case.

Pennsylvania's statutory law protects "confidential mediation communications and documents" which the Parties in this action have referred to as the "mediation privilege." See 42 Pa.C.S.A. § 5249. This statute reads as follows:

> § 5949. Confidential mediation communications and documents
>
> (a) General rule.— Except as provided in subsection (b), all mediation communications and mediation documents are privileged. Disclosure of mediation communications and mediation documents may not be required or compelled through discovery or any other process. Mediation communications and mediation documents shall not be admissible as evidence in any action or proceeding, including, but not limited to, a judicial, administrative or arbitration action or proceeding.
>
> (b) Exceptions.—
>
> > (1) A settlement document may be introduced in an action or proceeding to enforce the settlement agreement expressed in the document, unless the settlement document by its terms states that it is unenforceable or not intended to be legally binding.
> >
> > (2) To the extent that the communication or conduct is relevant evidence in a criminal matter, the privilege and limitation set forth in subsection (a) does not apply to:
> > > (i)     a communication of a threat that bodily injury
> > > (ii)    may be inflicted on a person;
> > > (iii)   a communication of a threat that damage may be inflicted on real or personal property

      under circumstances constituting a felony; or
    (iv) conduct during a mediation session causing direct bodily injury to a person.

  (3) The privilege and limitation set forth under subsection (a) does not apply to a fraudulent communication during mediation that is relevant evidence in an action to enforce or set aside a mediated agreement reached as a result of that fraudulent communication.

  (4) Any document which otherwise exists, or existed independent of the mediation and is not otherwise covered by this section, is not subject to this privilege.

 (c) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Mediation." The deliberate and knowing use of a third person by disputing parties to help them reach a resolution of their dispute. For purposes of this section, mediation commences at the time of initial contact with a mediator or mediation program.

"Mediation communication." A communication, verbal or nonverbal, oral or written, made by, between or among a party, mediator, mediation program or any other person present to further the mediation process when the communication occurs during a mediation session or outside a session when made to or by the mediator or mediation program.

"Mediation document." Written material, including copies, prepared for the purpose of, in the course of or pursuant to mediation. The term includes, but is not limited to, memoranda, notes, files, records and work product of a mediator, mediation program or party.

"Mediation program." A plan or organization through which mediators or mediation may be provided.

"Mediator." A person who performs mediation.

"Settlement document." A written agreement signed by the parties to the agreement.

### B. Relevancy (Reinsurance)

Rule 26(b)(1) of the Federal Rules of Civil Procedure, reads in pertinent part:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

## V. Discussion

### A. The Mediation Privilege

Pennsylvania's mediation privilege unambiguously protects "disclosure of mediation communications and mediation documents." This statute also unambiguously defines a "mediation communication" as a "communication made by . . . a party, mediator, mediation program or any other person present to further the mediation process when the communication occurs during a mediation session or outside a session when made to or by the mediator or mediation program." The statute defines a "mediation document" as "[w]ritten material, including copies, prepared for the purpose of, in the course of[,] or pursuant to mediation. The term includes, but is not limited to, memoranda, notes, files, records and work product of a mediator, mediation program or party." 42 Pa.C.S.A. § 5949 (a) and (c) (emphasis added).

In support of its assertion that the mediation privilege applies to shield the 77 documents in whole or in part from discovery, Selective relies upon an unreported case from the United States Court for the Eastern District of Pennsylvania, *Dietz & Watson v. Liberty Mutual Ins. Co.*, 2015 WL 356949, No. 14-4082 (E.D.Pa. 2015). In *Dietz & Watson*, the underlying lawsuit arose

when the underlying plaintiff sued D & W for a damages relating to a work place injury. D & W settled with the underlying plaintiff for $2.5 million whereby Liberty Mutual paid $1.75 million, and its own insured, D &W, paid $750,000.00. In addition, at the time of the settlement, counsel for D & W agreed that counsel for the underlying plaintiff could represent D &W in a future bad faith recovery lawsuit against Liberty Mutual and that the underlying plaintiff could recover the first $250,000.00 from Liberty in the bad faith action. In the ensuing bad faith case, D &W primarily claimed that Liberty failed to engage in good faith settlement negotiations with the underlying plaintiff and unreasonably refused to pay more than $1.75 million to settle the underlying lawsuit, forcing D & W to use its own money to settle the matter.

D & W filed a Motion to Compel the production of certain documents from Liberty Mutual which Liberty claimed were protected by Pennsylvania's mediation privilege. There were four mediations that the Eastern District Court found to be covered by Pennsylvania's mediation privilege. As to those four mediations the Eastern District Court noted in relevant part:

> D & W seeks all documents relating to communications ***during*** those mediation sessions. The parties do not dispute that Liberty's correspondence and claim notes reflecting communications made ***during*** those [mediation] sessions are relevant to D &W's claim that Liberty failed to engage in good faith settlements negotiations in the Underlying Action. . . . Specifically, the court rejects D&W's assertion that the mediation privilege does not apply in a bad faith action alleging an insurer's failure to engage in good faith settlement.

*Id.* at *4 (emphasis added). Thus, the Court held that the mediation privilege essentially transcends an underlying lawsuit and can be applied to a subsequent lawsuit which emerges from the first – such as a bad faith lawsuit.

The Eastern District Court also concluded the premise behind D &W's "no-mediation-privilege-for-subsequent-lawsuits" argument was also not relevant. D & W had suggested that

9

the potential disclosure of mediation information in a subsequent bad faith lawsuit would prevent insurance companies from engaging in self-serving bad faith in the first place. The Court held that it was rejecting "D&W's interpretation of Pennsylvania's mediation privilege because it is contrary to the plain language of the statute." *Id.* at *6. The court held that its duty was to apply the plain language of statute to facts before it, and it would not consider any public policy arguments that are better for the legislature.

> The Court concluded as follows:
>
> > The mediation privilege codified in 42 Pa. Cons.Stat. Ann. § 5949, however, is limited to communications "by, between or among" the mediator, parties and participants made during the mediation session, or communications made to the mediator or from the mediator outside a session. ***Thus, "discussions among parties outside the presence of the mediator and not occurring at a mediation proceeding are not privileged.*** Where the mediator has no direct involvement in the discussions and where the discussions were not designated by the parties to be a part of an ongoing mediation process, the rationale underlying the mediation privilege (*i.e.*, that confidentiality will make the mediation more effective) is not implicated." *United States Fid. & Guar. Co. v. Dick Corp.*, 215 F.R.D. at 506.

*Id.* at *6 (additional citations omitted) (emphasis added).

### B. Application of the Mediation Privilege to the Instant Case

In this case, the Court must determine if any of the documents produced for an *in camera* inspection meet the definition of a mediation communication or mediation document to which this privilege attaches. To that end, the Court begins its analysis by noting that Selective did not specify on its privilege log whether its decision to redact or withhold a document was because a portion of a document was "a mediation communication" or a "mediation document" as those

terms are defined.[4] Instead, Selective merely opted to cite the statute and then let this Court attempt to discern what Selective meant by the following entry on its privilege log: "Mediation and/or settlement conference privilege pursuant to 42 Pa.C.S. §5949, F.R.E. 408, and/or applicable law."[5] Selective's Brief in Support of its Motion for Protective Order and in Opposition to Golon's Motion to Compel at pages 7-11 (ECF 60 at p. 18-22) defines mediation communication and mediation document for the Court and then argues, "[a]ll of the documents withheld and/or redacted by Selective and submitted to the Court *in camera* qualify as mediation documents or mediation communications." ECF 60 at p. 20.

Despite the lack of pointed argument, Selective, who bears the burden of proving it is entitled to redact and/or withhold documents in accordance with Pennsylvania's mediation privilege, essentially argues that as a matter of public policy, the redacted statements (and the one withheld document) should remain hidden from Golon in order to preserve the air of openness during the mediation process. Stated differently, Selective contends that the purpose of Pennsylvania's mediation privilege is to enable the parties to be frank and honest with the

---

[4] Selective only produced one document (doc. no. 320) for the Court's in camera inspection which Selective withheld from production in its entirety based solely upon the mediation privilege. However, Selective identified at least two other documents on the privilege log as being withheld in their entirety for both reinsurance and mediation privilege purposes. See doc. nos. 353 and 356. Similarly, Selective identified at least six other documents (doc. nos. 373, 376, 381-383, and 388) which were redacted based solely upon the mediation privilege. None of these eight documents were made available to the Court for its *in camera* inspection. Also the Court notes that no document appeared behind tab no. 79. The Court issued an Order (ECF 68) seeking copies of these nine documents or a stipulation indicating they were properly withheld from the *in camera* inspection. Instead of producing copies or stipulating they were properly withheld, Selective filed a document (ECF 69) indicating that it met and conferred with opposing counsel about eight of these nine documents (doc. no. 79 is not mentioned), and that the "parties reached a settlement." No further details or information were provided to the Court. Only doc. no. 79 was delivered to the Court for its consideration.

[5] The Court finds that "F.R.E. 408" is not a valid reason to withhold or redact a document during discovery. This Rule addresses the <u>admissibility, not the discoverability</u>, of a document which sets forth certain offers to compromise. Thus, the Court concurs with Plaintiff's counsel on this point, and will not allow Selective to withhold or redact documents if its refusal to produce the materials is solely predicated upon F.R.E. 408. The Court also concurs with Plaintiff's counsel that "and/or applicable law" is not a valid basis for refusing to produce materials.

11

mediator and/or opposing parties without fear of reprisal in a subsequent bad faith lawsuit for doing so.

### 1. Rulings on Mediation Documents

Turning now to the documents themselves, none of the redacted or withheld documents qualify as "a mediation document" under the plain meaning of Pennsylvania's mediation privilege statute except for document no. 320. With respect to document 320, the document should only be redacted where the mediator (David White) wrote an email dated July 22, 2015 at 12:11 p.m. to Andrew Benedict and others. The remainder of the document no. 320, which contains an exchange between Andrew Benedict and George Cherrie, should be produced.

The Court finds that none of the documents in the two binders it received from Selective are "mediation documents" (with the exception of the portion of document no. 320, referenced above), because Selective was not a party to the underlying litigation – which is a requirement under the plain meaning of the definition of "mediation document" set forth in Pennsylvania's statute.[6]

### 2. Rulings on Mediation Communications

Next, the Court considers whether any statement in these documents could be considered a "mediation communication" under the plain meaning of the statute as applied to the facts in this case. The mediations in this case took place on: August 27, 2014 before retired Judge Gary Caruso; and on August 18 and 19, 2015 before attorney David White. In order to qualify as a "mediation communication" the redacted statement must be "made by, between or among a party, mediator, mediation program or any other person present to further the mediation process

---

[6] "Mediation document." Written material, including copies, prepared for the purpose of, in the course of or pursuant to mediation. The term includes, but is not limited to, memoranda, notes, files, records and work product of a mediator, mediation program or party. 42 Pa.C.S.A. § 5249(c).

when the communication occurs during a mediation session or outside a session when made to or by the mediator or mediation program." 42 Pa.C.S.A. § 5249(c).

Most of the documents (including document number 22 which bears the date of August 18, 2015) contain redacted statements made by a person present at the mediation *outside the [mediation] session.* Thus, in order for these statements to be protected by Pennsylvania's mediation privilege they must either be made by the mediator or to the mediator. None of the redacted statements were so made. To the contrary, these statements were made by a person present at the mediation session to someone (not the mediator) outside the mediation session.

There are a two exceptions. Document 40 and document 119 is a report from Golon's defense counsel recapping a telephone call he had with "Judge DelSole," a former Pennsylvania Superior Court Judge, who was retained by Selective as a consultant. Document 40 notes that Judge DelSole called David White, the mediator. The mediator made a statement to Judge DelSole, who reported the statement to Golon's defense attorney in the underlying action, who, in turn, communicated David White's statement to Bob Arcovio (Golon's employee-driver's civil defense attorney), and others at Selective Insurance company. Based upon the fact that the redacted statement in document 40 and document 119 was initially made by the mediator for the purpose of encouraging further mediation, the Court finds that this statement was properly redacted.

The Court notes that there are numerous documents wherein Selective has redacted statements a mediator or a party may have said during the course of a mediation. See, *i.e.*, doc. no. 22 and doc. no. 180. However, these documents are nothing more than reports and/or claims notes. These redacted documents contain statements which were made by a person who *may have been* present at the mediation session to someone (not the mediator) *outside* the mediation

13

session. Thus, they do not meet the plain meaning of the definition of "mediation communication" and therefore, are not protected by Pennsylvania's mediation privilege.

Moreover, the Court also notes that Selective was inconsistent when redacting many of these same non-privileged documents.

### 3. Mediation Privilege Conclusion

Accordingly, this Court finds that the mediation privilege as defined by 42 Pa.C.S.A § 5249(c) applies to the following documents as follows:

First, doc. no. 320 should be redacted where the mediator (David White) wrote an email dated July 22, 2015 at 12:11 p.m. to Andrew Benedict and others. The remainder of doc. no. 320, which contains an exchange between Andrew Benedict and George Cherrie, should be produced.

Second, doc. no. 40 and doc. no. 119 were properly redacted. The remainder of the documents withheld or redacted by Selective must be produced in their entirety.

Finally, F.R.E. 408, mediation document, and "and/or applicable law," as set forth in Selective's privilege log, are **not** valid reasons to withhold or redact documents during discovery.

### C. Relevancy of Reinsurance Documents

There is no absolute exclusion of reinsurance information, as discovery of such information has been readily permitted. *PECO Energy Co. v. Ins. Co. of N. Am.,* 852 A.2d 1230, 1234 (Pa. Super. 2004). Pennsylvania courts allow discovery [into reserves] only in the limited circumstance of a claim for bad faith involving an insurer's failure to settle, including a failure to make a reasonable settlement offer, or where there is a dispute regarding the value of a claim,

such as in the case of underinsured motorist (UIM) claims. *Mine Safety Appliances Co. v. N. River Ins. Co.*, No. 2:09-CV-00348-DSC, 2012 WL 12930363, at *3 (W.D. Pa. Mar. 14, 2012), report and recommendation adopted, No. 2:09-CV-348, 2012 WL 12930287 (W.D. Pa. Sept. 17, 2012). As stated by Judge Penkower in his Opinion in *Mine Safety*:

> In *Szarmack v. Welch*, 318 A. 2d 707 (Pa. 1974), wherein the Supreme Court of Pennsylvania explained that the purpose of permitting discovery of the existence of and content of any insurance agreement is to equalize the knowledge of both parties and give the plaintiff "assurance that there can be recovery in the event of a favorable verdict to justify the time, effort and expense of preparing for trial." *Id*. at 709. Although the discovered information may not be admissible at trial, it would allow parties to fairly evaluate settlement offers and foster a just, speedy and inexpensive determination. *Id*. at 709-710.

2012 WL 12930363, at *4.

Given the nature of this case, and the allegations brought by Golon, this Court finds that all of Selective's documents which were either withheld or redacted because the document either referenced or discussed reinsurance should be produced in their entirety. However, this does not guarantee that these documents will be admissible at the time of trial. The Court is ordering them produced so that Golon can evaluate what Selective did or did not do, and when Selective took action with its own reinsurer, in relation to the underlying claim.

### D. Selective's Motion for Protective Order

In light of the above analysis, the Court will deny Selective's Motion for Protective Order. Importantly, Selective's Motion requested that this Court preclude all discovery which would include deposition of deposition testimony related to the mediation privilege and reinsurance. Accordingly, this request will be denied.

The Court has explained above, in great detail, why certain documents or portions of documents may not be shared with Golon.  However, most of the documents are producible in their entirety.  Similarly, Golon may freely elicit testimony concerning reinsurance, but Golon must tread cautiously when asking questions related to mediations.  For example, a question to Mr. Golon concerning what he specifically was told by the mediator is not permissible.  A slightly broader question to Mr. Golon as whether what he heard at a mediation increased or decreased his belief that the underlying case should settle within policy limits is borderline, but likely admissible.  An even broader question to Mr. Golon, such as what informed his decision that the underlying case should settle within the $11 million policy limits, would be a fair question.

## VI. Conclusion

This Court has been led to its decision in this matter after careful consideration of the documents produced under seal, and the application of Pennsylvania's statutory law establishing the mediation privilege and the scant case law interpreting the privilege to those 77 sealed documents.  For the reasons set forth above, the Court will grant Plaintiff's Motion to Compel in part, and will deny the Motion to Compel in part.  In particular, Golon's Motion to Compel will be denied as to doc. no. 320 and the redactions made on doc. no. 40 and doc. no. 119, but Golon's Motion to Compel will be granted in all other respects.  Selective's Motion for Protective Order will be denied in its entirety.

                                          s/Arthur J. Schwab
                                          Arthur J. Schwab
                                          United States District Judge